**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CIGNA HEALTH AND LIFE INSURANCE COMPANY and CIGNA HEALTHCARE OF ILLINOIS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| LABORATORY PHYSICIANS, LLC, and WINFIELD LABORATORY CONSULTANTS, S.C. | ) ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT FOR DECLARATORY AND OTHER EQUITABLE  RELIEF

Plaintiffs, Cigna Health and Life Insurance Company and Cigna HealthCare of Illinois, Inc. (collectively, "Cigna"), bring this action to obtain declaratory and other equitable relief that is necessary to enforce the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") and the terms of the employee benefit plans for which Cigna is a fiduciary. As explained below, the defendant pathology groups, Laboratory Physicians, LLC, and Winfield Laboratory Consultants, S.C., have initiated arbitrations under the Illinois Insurance Code that violate ERISA's exclusive remedies, ERISA's batching requirements for out-of-network reimbursement disputes, and the terms of the benefit plans.

## INTRODUCTION

1.     Cigna administers, and sometimes insures,  medical claims under benefit plans that employers have established to provide their employees and employees' beneficiaries with benefits in the event of accident, sickness, and injury. In this respect, Cigna is a fiduciary of the plans within the meaning of 29 U.S.C. § 1002(21). Defendants are out-of-network or "nonparticipating"

pathology groups that provide administrative laboratory management and oversight services for in-network or "participating" hospitals. Defendants do not have contracts with Cigna that specify reimbursement rates for services rendered to Cigna plan members, but the hospitals where they provide services have contracts with Cigna. Each defendant has filed a nearly identical demand for arbitration against Cigna pursuant to § 356z.3a of the Illinois Insurance Code, 215 ILCS 5/356z.3a, seeking payment for pathology services allegedly performed for thousands of ERISA plan members. The arbitration demands were filed with the American Arbitration Association ("AAA") at the same time and by the same law firm.

2.      With respect to the defendants' reimbursement claims under ERISA plans, this Court should enter a declaratory judgment that the pathology groups are prosecuting the arbitrations in a manner that violates ERISA's provisions and the terms of the plans. Specifically, the pathology groups are using the arbitrations as a separate vehicle to recover benefits under ERISA plans but outside of ERISA's remedial scheme, which is exclusive and preempts the pathology groups' state-law remedies. Further, defendants are violating the claim-batching requirements imposed by ERISA, 29 U.S.C. § 1185e(c)(3)(A), the Public Health Service Act ("PHSA"), 42 U.S.C. § 300gg-111(c)(3)(A), and § 356z.3a of the Illinois Insurance Code. Under § 1185e(c)(3)(A), an out-of-network provider may batch multiple claims into the same arbitration only if they involve services performed within a 30-day period, and all batched claims involve "items and services … related to the treatment of a similar condition."[1]

3.      Cigna and the plans for which it is a fiduciary are being harmed by the pathology groups' unlawful arbitrations. In particular, Cigna is being forced to defend ERISA-related

---

[1] The pathology groups' arbitrations violate the express terms of § 356z.3a itself, since it applies only to "health insurance issuers," and that term expressly excludes the self-funded, ERISA-governed group health plans that apply to an estimated 85% of the claims at issue. 215 ILCS 5/356z.3a(a); 215 ILCS 97/5.

reimbursement claims before arbitral bodies that have no contractual or statutory authority to decide these claims. As a result, Cigna and the benefit plans face the prospect of *ultra vires* arbitral awards requiring them to pay additional plan benefits in violation of ERISA's exclusive remedial scheme and in violation of the batching requirements of ERISA (§ 1185e(c)(3)), the PHSA (42 U.S.C. § 300gg-111), and § 356z.3a(d).

4.      Under § 1132(a)(3) of ERISA, and 28 U.S.C. § 2201, Cigna seeks the following judicial declarations to assist Cigna in enforcing the provisions of ERISA and the terms of the plans. The Court should enter an order declaring that:

a.      ERISA preempts the claims that the pathology groups have asserted under § 356z.3a with respect to self-insured ERISA-governed benefit plans;

b.      the pathology groups' maintenance of the arbitrations violates ERISA's exclusive remedial scheme, 29 U.S.C. § 1132(a), and its preemption provision, 29 U.S.C. § 1144;

c.      the pathology groups' maintenance of the arbitrations violates the terms of the self-insured benefit plans, which provide that Cigna, as a claims fiduciary, will determine benefit payments for out-of-network services, not arbitrators acting pursuant to inapplicable state insurance code provisions;

d.      the pathology groups have batched their claims in violation of ERISA (§ 1185e(c)(3)), the PHSA (§ 300gg-111(c)(3)), and 215 ILCS 5/356z.3a; and

e.      the AAA and the arbitrators it has appointed do not have authority or jurisdiction over the reimbursement claims that relate to self-insured ERISA-governed benefit plans.

## PARTIES

5.      Plaintiff Cigna Health and Life Insurance Company is a Connecticut corporation that is licensed to write health insurance in the State of Illinois. Plaintiff Cigna Healthcare of Illinois, Inc. is an insurance company organized under the laws of Illinois with its principal place of business in Chicago, Illinois.

6.      Defendant Laboratory Physicians, LLC ("Laboratory Physicians"), is an Illinois limited liability company with its principal place of business in Geneva, Illinois. Laboratory Physicians is a group pathology practice that staffs the laboratory of Northwestern Medicine Delnor Hospital ("Delnor Hospital"). Delnor Hospital is in-network with Cigna. Laboratory Physicians is out-of-network with Cigna.

7.      Defendant Winfield Laboratory Consultants, S.C. ("Winfield"), is an Illinois corporation with its principal place of business in Winfield, Illinois. Winfield is a group pathology practice that staffs the laboratory of Northwestern Medicine Central DuPage Hospital ("CDH"). CDH is in-network with Cigna. Winfield is out-of-network with Cigna.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(e)(1) and (f), and the federal question statute, 28 U.S.C. § 1331. Cigna, as a plan fiduciary, brings this action under ERISA to enjoin an "act or practice which violates" the provisions of ERISA and applicable plan terms and to "obtain other appropriate equitable relief" in the form of judicial declarations "(i) to redress such violations" and "(ii) to enforce provisions of" ERISA and the terms of the plans. In particular, the arbitrations commenced by the pathology groups violate: (a) provisions of ERISA, namely 29 U.S.C. §§ 1132 and 1144, because defendants are using the arbitrations to circumvent ERISA's exclusive remedial scheme; (b) ERISA's batching

4

requirements for out-of-network reimbursement disputes, § 1185e(c)(3); and (c) the terms of the plans providing that Cigna, not arbitrators selected under § 356z.3a, is to decide benefit claims under the plans.

9.      This Court has personal jurisdiction over Defendants because each of them conducts business in the State of Illinois.

10.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because Cigna brings this suit on behalf of plans that are administered in this district, and Laboratory Physicians and Winfield reside in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

**I.      Defendants' PCCP Services and Modifier 26.**

11.     For billing and reimbursement purposes, some pathology services rendered in a hospital or facility may consist of two components, one being the professional component for a physician's work in interpreting a diagnostic test and preparing a written report, and the second being a technical component for providing the equipment, supplies and technician associated with a diagnostic test. However, separate payments for the professional and technical components are not always appropriate. For instance, when the same facility or same physician owns the equipment, and/or employs the technician to perform the procedure and the physician to interpret the results, only a global fee for the complete service is payable. Likewise, only a global fee for the complete service is payable when a pathology group provides automated diagnostic or laboratory testing for a hospital and that testing does not require test interpretation or preparation of a written report by a pathologist, or when the underlying services are ones where the concept of a separate technical and professional component does not apply. In those scenarios, separate

technical component and professional component reimbursements are not payable, under both the policies of the Centers for Medicare and Medicaid ("CMS") and those of Cigna.

12.　　For those laboratory tests for which a separate professional component may be billed and reimbursed, the specific service performed by the pathologist is identified by adding Current Procedural Terminology (CPT®) Modifier 26 to the CPT code for the service. When appended to a CPT code, Modifier 26 signifies that the pathologist is seeking payment for only the professional component of the service.

13.　　This lawsuit and the underlying arbitrations arise from disputes between the defendant pathology groups and Cigna over whether the pathology groups are entitled to payment of a separate professional component of clinical pathology services ("PCCP Services") when they provide administrative oversight for automated laboratory testing that does not entail a pathologist interpreting a laboratory test result and preparing a report on the test.

14.　　Defendants assert that they are entitled to a separate professional component for various administrative services they perform on an out-of-network basis at in-network hospitals, such as ensuring that tests are properly performed, recorded and reported; interacting with members of the medical staff regarding issues of laboratory operations; designating protocols and establishing parameters for testing; recommending appropriate follow-up diagnostic tests, when appropriate; supervising laboratory technicians and advising technicians regarding aberrant results; selecting, evaluating and validating test methodologies; directing, performing, and evaluating quality assurance and control procedures; evaluating clinical laboratory data and establishing a process for review of test results; and ensuring the hospital laboratory's compliance with laws and standards ("Administrative PCCP Services").

II.     **The federal government declines to reimburse pathologists directly for Administrative PCCP Services.**

15.     In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act ("TEFRA"). TEFRA added section 1887 of Title XVIII of the Social Security Act, and a conforming change to section 1861(v)(7). Pursuant to TEFRA, Medicare does not reimburse pathologists directly for Administrative PCCP Services. In fact, Medicare Part B does not cover Administrative PCCP Services. Medicare issues payments to hospitals under Medicare Part A, and hospitals are encouraged to make arrangements with independent contractor pathologists for payment of Administrative PCCP Services to avoid running afoul of the federal Anti-Kickback Statute.

16.     Consistent with TEFRA, CMS limits the services for which a pathologist may appropriately use Modifier 26 (the modifier for the professional component of the service) to those instances in which the physician is exercising medical judgment, including the interpretation of test results and the preparation of a written report. CMS does not permit the use of Modifier 26 in conjunction with Administrative PCCP Services, such as automated diagnostic tests, laboratory management and oversight. CMS requires pathologists to negotiate a management fee with their hospital administration for the pathologists' provision of Administrative PCCP Services.

III.    **Cigna follows the approach to Administrative PCCP Services and Modifier 26 used by the federal government.**

17.     Cigna administers claims for healthcare benefits pursuant to the terms of its health benefit plans sponsored by private employers. For fully insured plans, Cigna acts as both administrator and insurer. For self-funded employer-sponsored plans, Cigna acts as a claims administrator and decides whether to use plan assets to pay claims from medical providers for services allegedly rendered to plan members. Approximately 85% of the claims administered by

7

Cigna are for self-funded, employer-sponsored plans and are not insured by Cigna. Cigna pays claims (for fully insured plans) or adjudicates claims for payment from employer funds (for self-funded plans) based on the terms of the applicable benefit plans (SPDs) and its payment policies. One of those policies is the "Modifier 26 Professional Component" policy ("Modifier 26 Policy"). That policy applies to claims for the Administrative PCCP Services at issue here.

18.     The Modifier 26 Policy imposes limitations on the payment of a professional component for pathology services that are similar to those imposed by CMS. The Modifier 26 Policy provides that a separate professional component is appropriate only if the CPT code billed is eligible for the professional component under CMS's National Physician Fee Schedule Relative Value File. The Modifier 26 Policy only allows separate reimbursement for PCCP Services "when modifier 26 is appended to codes consistent with . . . CMS Payment Policies."

19.     Cigna first notified providers about upcoming changes to the Modifier 26 Policy in April 2021, explaining that implementation of the policy may result in the denial of payment for claims to which providers improperly applied Modifier 26.

## IV.     The plan administrators of the benefit plans grant Cigna discretionary authority, making it a fiduciary with respect to claim determinations and benefit payments.

20.     Generally, the plan administrators of the plans has delegated to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with Cigna's review of claims under the plan. Such discretionary authority includes, but is not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The plan administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial, which has been appealed by the claimant or his duly authorized representative.

21.     Attached as **Exhibits 1-2** are true and correct copies of summary plan descriptions applicable to claims for items and services that Defendants have placed at issue in the arbitrations. Below is a table showing the summary plan description applicable to exemplar reimbursement claims that the pathology groups have asserted. In each of the summary plan descriptions, the plan administrator delegates to Cigna the discretionary authority described *supra* in paragraph 20 at the pages in the summary plan description listed below. Further, relevant to ERISA preemption and the complementary scopes of the NSA and § 356z.3a, the plan documents reflect that each plan is self-insured by the employer sponsor, not insured by Cigna.

| AMI[2] | Plan Sponsor | Provider | Grant of Discretion | Employer Self-Insures Plan? |
|---|---|---|---|---|
| ▇▇▇▇ | ▇▇▇▇ ▇ | Laboratory Physicians | Ex. 1 at 67 | Y |
| ▇▇▇▇ | ▇▇▇▇ | Winfield | Ex. 2 at 66 | Y |

22.     ERISA defines a fiduciary as any person exercising discretionary authority or control respecting the management of a plan or having discretionary responsibility in the administration of a plan. 29 U.S.C. § 1002(21)(A)(i), (iii). Cigna acts as a fiduciary with respect to the plans identified in the above-listed table, and other plans applicable to the claims for items and services at issue in the arbitrations.

**V.     The No Surprises Act governs out-of-network reimbursement disputes affecting self-insured employer-sponsored benefit plans, while § 356z.3a only governs such disputes involving insured plans issued by "health insurance issuers."**

23.     On December 27, 2020, the No Surprises Act ("NSA"), was signed into law. *See* No Surprises Act, Pub. L. No. 116-260. The NSA provides federal protections against surprise billing under many of the circumstances in which surprise bills most frequently arise. The NSA

---

[2] This is the alternative member identification. It is referred to as the policy number on the Defendants' claim lists.

prohibits balance billing by nonparticipating providers unless certain notice and consent requirements are met. I.R.C. § 9816; 29 U.S.C. § 1185e; 42 U.S.C. § 300gg-111. These prohibitions apply to non-emergency services performed by nonparticipating providers, such as Defendants.

24.     Section 103 of the NSA establishes an independent dispute resolution ("IDR") process that allows plans and issuers and nonparticipating providers to resolve disputes over out-of-network rates. I.R.C. § 9816; 29 U.S.C. § 1185e; 42 U.S.C. § 300gg-111. The regulations establish how the IDR process works. 29 C.F.R. § 2590.716-8. To initiate the IDR process, a party must submit a written notice of IDR initiation to the other party and to the Secretary of Labor. 29 C.F.R. § 2590.716-8(b)(2)(i). The parties must then work to select a certified IDR entity. 29 C.F.R. § 2590.716-8(c)(1). Within ten business days after the selection of the certified IDR entity, the plan or issuer and the provider, facility, or provider must submit an offer of an out-of-network rate. 29 C.F.R. § 2590.716-8(c)(4)(i). Within thirty business days after the selection of the certified IDR entity, the certified IDR entity must select the out-of-network rate for the qualified item or service, notify the parties of the determination, and provide a written decision. 29 C.F.R. § 2590.716-8(c)(4)(ii).

25.     The NSA and ERISA permit a nonparticipating provider to batch multiple items or services together in a single IDR process, but only if the batched items or services meet certain requirements. 29 U.S.C. § 1185e(c)(3); 42 U.S.C. § 300gg-111(c)(3). Those requirements include: (i) such items and services are furnished by the same provider or facility; (ii) payment for such items and services is required to be made by the same group health plan or health insurance issuer; (iii) such items and services are related to the treatment of a similar condition; and (iv) such items

and services were furnished during the 30 day period following the date on which the first item or service included with respect to such determination was furnished. *Id.*

26.     Section 356z.3a of the Illinois Insurance code (the "Insurance Code") is similar to the NSA. It also prohibits balance billing by nonparticipating providers of covered ancillary services at participating hospitals. 215 ILCS 5/356z.3a(b-5). Section 356z.3a of the Insurance Code likewise establishes a dispute-resolution process for "covered ancillary services" rendered by a nonparticipating provider at a participating facility or hospital. 215 ILCS 5/356z.3a(d)-(e). In the event of a dispute, either party may initiate binding arbitration to determine payment for the services. 215 ILCS 5/356z.3a(d). The arbitration shall be initiated by filing a request with the Illinois Department of Insurance ("DOI"). *Id.* Once an arbitrator is selected, the arbitration shall consist of a review of written submissions by both parties. 215 ILCS 5/356z.3a(e). The arbitrator shall provide a written decision within forty-five days after the request is filed with the DOI. *Id.*

27.     Section 356z.3a allows a nonparticipating provider to initiate arbitration to determine payment for services on a batched-bill basis, but only in accordance with Section 300gg-111 of the PHSA. 215 ILCS 5/356z.3a(d). Like § 1185e of ERISA, § 300gg-111 of the PHSA imposes the following requirements on batched-billing: (i) the items and services must be furnished by the same provider or facility; (ii) payment for such items and services must be required to be made by the same group health plan or health insurance issuer; (iii) such items and services must be related to the treatment of a similar condition; and (iv) such items and services must have been furnished during the 30 day period following the date on which the first item or service included with respect to such determination was furnished. 42 U.S.C. § 300gg-111(c)(3).

28.     By its terms, § 356z.3a does not apply to group health plans. It applies to only "health insurance issuers" as that term is defined in the Illinois Health Insurance Portability and

Accountability Act ("HIPAA"). 215 ILCS 5/356z.3a(a). Section 5 of the Illinois HIPAA provides that the term "health insurance issuer" "does not include a group health plan." 215 ILCS 97/5. It further defines a "group health plan" as "an employee welfare benefit plan …to the extent that the plan provides medical care…to employees or their dependents…directly or through insurance, reimbursement, or otherwise." *Id.* In other words, by its terms § 356z.3a excludes from the state IDR process disputes over out-of-network reimbursement under self-insured group health plans governed by ERISA. The SPDs attached as Exhibits 1-2 show that no "health insurance issuer" is involved as that term is defined in the Insurance Code and 42 U.S.C. § 300gg-91.

29.     CMS has issued guidance making clear that the NSA governs the IDR process for out-of-network disputes affecting self-insured ERISA plans:

> In order for a state law to determine the recognized amount or out-of-network rate, any such law must apply to: (1) The plan, issuer, or coverage involved, including where a state law applies because the state has allowed a plan that is not otherwise subject to applicable state law an opportunity to opt in, subject to section 514 of ERISA…In instances where a state law does not satisfy all of these criteria, the state law does not apply to determine the recognized amount or out-of-network rate.

Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,885 (July 13, 2021).

30.     Further, ERISA preempts all State laws as far as they relate to any employee welfare benefit plan. 29 U.S.C. § 1144(a). Section 356z.3a of the Insurance Code clearly relates to employee welfare benefit plans insofar as it provides a vehicle by which a nonparticipating provider can pursue a claim for benefits under an employee welfare benefit plan, and it governs the payment of benefits under employee welfare benefit plans. ERISA therefore preempts any claim for benefits from an employee welfare benefit plan brought by or through § 356z.3a of the Insurance Code. And § 356z.3a claims cannot be saved from preemption with respect to self-insured benefit plans, since no employee benefit plan "shall be deemed to be an insurance company

or other insurer … for purposes of any law of any State purporting to regulate insurance companies." 29 U.S.C. § 1144(b)(2).

31.     To clarify the respective scopes of the NSA and § 356z.3a, CMS has prepared a chart for determining the applicability of the IDR process. According to that chart, and consistent with ERISA's broad preemption provisions, the NSA's IDR process applies to all self-insured plans sponsored by private employers, private employee organizations, or both in all states, except in cases in which such a plan has opted into a specified state law's process. A copy of the CMS chart is attached as **Exhibit 3**.

32.     The DOI has echoed this conclusion. In 2022, the DOI issued Company Bulletins 2022-03 and 2022-13 to provide guidance concerning the initial implementation of the NSA in Illinois. Company Bulletin 2022-03 states that "NSA default requirements apply to all health care plans issued under an HMO certificate of authority, including voluntary health services plans and point-of-service products." *See* **Exhibit 4**. It further states that "[s]elf-funded plans of individual employers, employee organizations, and state or local governments are subject to the NSA default requirements and are not subject to Section 356z.3a." *Id.* At § VIII, Company Bulletin 2022-13 provides the same.[3] *See* **Exhibit 5**.

**VI.     Defendants file demands for arbitration against Cigna pursuant to § 356z.3a of the Illinois Insurance Code.**

33.     On or around January 4, 2024, each Defendant filed a demand for arbitration ("Demand") pursuant to § 356z.3a of the Insurance Code against Cigna. True and correct copies of each Demand (excluding exhibits) are attached as **Exhibits 6-7**. Defendants seek awards for what they describe as the "professional component of clinical pathology services," which they

---

[3] https://idoi.illinois.gov/content/dam/soi/en/web/insurance/companies/companybulletins/cb2022-13.pdf (Company Bulletin 2022-13); https://idoi.illinois.gov/content/dam/soi/en/web/insurance/companies/companybulletins/cb2022-03.pdf (Company Bulletin 2022-03).

performed on an out-of-network basis for "the benefit of patients who are insured under health insurance plans issued and/or administered by Cigna." *See id*. Each Defendant alleged that the AAA has jurisdiction over the arbitration pursuant to 215 ILCS 5/356z.3a. *Id.* ¶ 1. Defendants attached as Exhibit C to each Demand a list of claims for Administrative PCCP Services for which each Defendant sought benefits. Defendants asked the arbitrator to determine the appropriate payment amount for every claim identified in Exhibit C on a batched-bill basis. *Id.* ¶ 40. Cigna filed a motion to dismiss each of the arbitrations because the AAA does not have authority or jurisdiction to decide the claims. Those motions remain pending. In the Laboratory Physicians arbitration, the parties have also submitted briefs on the merits pursuant to 215 ILC 5/356z.3a(e).

34.     Defendants are placing tens of thousands of claims for Administrative PCCP Services at issue in each arbitration. Those claims are for Administrative PCCP Services that Defendants provided over a two-year period. The claims seek benefits for Administrative PCCP Services that would need to be paid by different group health plans or health insurance issuers. The claims also seek benefits for dissimilar items or services. The arbitration demands violate the batching requirements of ERISA and the PHSA. 29 U.S.C. § 1185e(c)(3), 42 U.S.C. § 300gg-111(c)(3).

35.     In the arbitrations, Defendants seek benefits from employee welfare benefit plans by and through § 356z.3a of the Insurance Code. Each Demand contains a single count, styled as a "request to recover payment for pathology services rendered to Cigna patients."

36.     With respect to the patients who have benefits coverage under ERISA plans, all of the Defendants' claims are premised on the existence of ERISA plans. Each arbitration demand alleges that the claimant pathology group has provided PCCP services "for the benefit of patients who are insured under health insurance plans issued and/or administered by Cigna." Exs. 6-7 at 1.

14

The benefits plan covering each patient are the only threads connecting the claimant pathology group and Cigna. The groups would have no reimbursement claim against Cigna or dispute with Cigna in the absence of Cigna's administration of each patient's benefit plan.

**COUNT ONE**
**DECLARATORY AND OTHER EQUITABLE RELIEF UNDER ERISA § 1132(a)(3)**

37. Cigna incorporates and re-alleges paragraphs 1-36 as if fully set forth herein.

38. Cigna is a fiduciary of the self-insured benefit plans because it administers claims under the plans, decides whether to pay claims with plan assets (*i.e.*, funds contributed to the plan by the sponsoring employer), and interprets the coverage and exclusion provisions of the plans. *See* 29 U.S.C. § 1002(21)(A) (providing that a person is a fiduciary with respect to a plan to the extent the person "exercises any discretionary authority or discretionary control respecting management of such plan," "exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan").

39. As a "fiduciary" under 29 U.S.C. § 1002(21), Cigna may bring a civil action to enjoin and obtain declaratory relief related to acts or practices that violate any provision of Subchapter I of ERISA (29 U.S.C. §§ 1001-1193) or the terms of a plan. 29 U.S.C. § 1132(a)(3). Under § 1132(a)(3), Cigna may seek other appropriate equitable relief to redress acts or practices that violate ERISA.

40. Defendants have violated and are continuing to violate ERISA's preemption provision by prosecuting arbitrations that circumvent the exclusive remedial scheme of ERISA. ERISA's express preemption clause, 29 U.S.C. § 1144, preempts state-law claims that function as a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme even when the claim is asserted with respect to an insured plan.

41. Defendants are using unlawful arbitrations under 215 ILCS 5/356z.3a in an effort to obtain benefits from employee welfare benefit plans outside of ERISA's remedial scheme.

42. Defendants have also violated and are continuing to violate the batched-bill requirements imposed by the PHSA and ERISA. Defendants are attempting to batch-bill thousands of claims implicating different plans and services, and the dates of Defendants' services exceed the permissible timeframe. 42 U.S.C. § 300gg-111(c)(3); 29 U.S.C. § 1185e(c)(3).

43. Moreover, under controlling federal and state statutes, the state arbitration process under § 356z.3a does not extend to out-of-network disputes under employer-sponsored self-insured benefit plans. It applies only with regard to disputes over covered services between a nonparticipating provider and a "health insurance issuer," which expressly excludes the group health plans at issue here. 215 ILCS 5/356z.3a(a) (limiting statute's scope to out-of-network disputes with "health insurance issuer" as defined in Illinois HIPAA); 215 ILCS 97/5 (defining "health insurance issuer" as excluding "group health plans"); 42 U.S.C. § 300gg-23 (allowing state out-of-network dispute laws to be applied to only health insurance issuers, not group health plans); 42 U.S.C. § 300gg-91(a)(1), (b)(2) (consistent with § 356z.3a, defining "health insurance issuer" as excluding "group health plan"). The DOI and CMS both have issued guidance stating that out-of-network disputes under self-insured ERISA plans must be arbitrated under the NSA, while such disputes may be arbitrated under § 356z.3a only if they involve fully insured plans. *See* Exs. 3-5.

44. In short, the arbitration process under § 356z.3a does not extend to claims under self-insured plans. And ERISA preempts state insurance code arbitrations seeking additional payment for out-of-network services under self-insured ERISA plans. As a result, the AAA and the arbitrators it has appointed have no authority or jurisdiction to decide the claims the Defendants have asserted with respect to self-insured benefit plans.

45.     Additionally, the Defendants' maintenance of the arbitrations violates the terms of the self-insured plans. The terms of the exemplar plans uniformly provide that the plan administrator of each plan has "delegate[d] to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." Cigna's discretionary authority includes "the computation of any and all benefit payments." Defendants thus are using the § 356z.3a arbitrations to violate and abrogate the plan terms providing that Cigna will determine the amounts payable for covered services. Defendants are attempting to replace Cigna's determinations with those of the arbitrators.

46.     The arbitrations are harming Cigna, and the self-insured plans it administers, because they are forced to defend unlawful arbitration proceedings involving thousands of claims: (A) that have been batched together in violation of the PHSA (§ 300gg-111(c)(3)) and ERISA (§ 1185e(c)(3)); (B) that are subject to ERISA's exclusive remedial scheme; and (C) that the arbitrators selected under § 356z.3a have no statutory or contractual authority to decide. Cigna and the self-insured plans face the prospect that arbitrators having no statutory or contractual power over claims under self-insured ERISA plans will require Cigna and those plans to pay out additional benefits in contravention of Cigna's interpretation of the plans' terms, ERISA's exclusive remedies (29 U.S.C. § 1132), and ERISA's batching requirements for out-of-network reimbursement disputes (29 U.S.C. § 1185e(c)(3)).

WHEREFORE, Cigna requests that the Court enter declaratory and other equitable relief to assist Cigna and the self-insured plans in enforcing the foregoing provisions of ERISA and the terms of the plans. For the reasons stated, the Court should enter an order and judgment declaring that:

a.     ERISA preempts the claims that the Defendants have asserted under § 356z.3a with respect to self-insured ERISA-governed benefit plans;

b.     Defendants' maintenance of the arbitrations violates ERISA's exclusive remedial scheme, 29 U.S.C. § 1132(a), and its preemption provision, 29 U.S.C. § 1144;

c.     Defendants' maintenance of the arbitrations violates the terms of the self-insured benefit plans, which provide that Cigna, as a claims fiduciary, will determine benefit payments for out-of-network services, not arbitrators acting pursuant to inapplicable state insurance code provisions;

d.     Defendants have batched their claims in violation of ERISA (§ 1185e(c)(3)), the PHSA (§ 300gg-111(c)(3)), and 215 ILCS 5/356z.3a; and

e.     The AAA and the arbitrators it has appointed do not have authority or jurisdiction over the reimbursement claims that relate to self-insured ERISA-governed benefit plans.

## COUNT TWO
## DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

47.    Cigna incorporates and re-alleges paragraphs 1-36 as if fully set forth herein.

48.    By their actions, Defendants are forcing Cigna to arbitrate claims that are not arbitrable under § 356z.3a of the Insurance Code.

49.    Section 356z.3a of the Insurance Code does not apply to self-insured employee welfare benefit plans.

50.    ERISA preempts Defendants' claims for relief by and through § 356z.3a of the Insurance Code, and § 356z.3a of the Insurance Code does not apply to Defendants' claims, because those claims seek benefits from self-insured employee welfare benefit plans.

51.     Because § 356z.3a of the Insurance Code does not apply to Defendants' claims, those claims are not properly before the AAA. Any award entered by any arbitrator with respect to those claims will exceed the arbitrator's authority. The arbitrations are consequently unlawful and the arbitrators have no statutory or contractual authority to decide Defendants' claims respecting patients who were covered under self-insured group health plans.

52.     Defendants have also failed to comply with the batch-billing requirements imposed by the PHSA (§ 300gg-111(c)(3)), ERISA (§ 1185e(c)(3)), and § 356z.3a of the Insurance Code. In each arbitration, Defendants are attempting to batch together thousands, or tens of thousands, of claims for items or services that would need to be paid by different plans or issuers, are for different conditions, and were not provided within the same thirty-business-day timeframe.

53.     The arbitrations also violate the terms of the self-insured plans, which provide that the plan administrator of each plan has "delegate[d] to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan." Cigna's discretionary authority includes "the computation of any and all benefit payments." Defendants thus are using the § 356z.3a arbitrations in an effort to violate and abrogate the plan terms providing that Cigna will determine the amounts payable for covered services. Defendants are attempting to replace Cigna's determinations with those of the arbitrators.

54.     There is a real, substantial, and justifiable issue in controversy between Cigna, on the one hand, and Defendants, on the other hand, with respect to whether the claims asserted by Defendants in the arbitrations are subject to arbitration under 215 ILCS 5/356z.3a, whether ERISA preempts those claims, and whether Defendants have batched the claims in violation of ERISA, 29 U.S.C. § 1185e(c)(3), and the PHSA, 42 U.S.C. § 300gg-111(c)(3).

55.     A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time.

56.     Cigna requests that the Court enter a declaratory order determining that claims asserted by Defendants in the arbitrations are not subject to arbitration under 215 ILCS 5/356z.3a, that ERISA preempts those claims, and that Defendants have failed to properly batch those claims.

57.     Cigna is suffering and will continue to suffer harm because it must defend against and participate in arbitration proceedings where the arbitral bodies have neither statutory nor contractual authority to decide the claims the Defendants have asserted with respect to self-insured employer-sponsored ERISA plans.

WHEREFORE, for the reasons stated, Cigna respectfully requests that the Court enter a declaratory judgment that:

a.      ERISA preempts the claims that the Defendants have asserted under § 356z.3a with respect to self-insured ERISA-governed benefit plans;

b.      Defendants' maintenance of the arbitrations violates ERISA's exclusive remedial scheme, 29 U.S.C. § 1132(a), and its preemption provision, 29 U.S.C. § 1144;

c.      Defendants' maintenance of the arbitrations violates the terms of the self-insured benefit plans, which provide that Cigna, as a claims fiduciary, will determine benefit payments for out-of-network services, not arbitrators acting pursuant to inapplicable state insurance code provisions;

d.      Defendants have batched their claims in violation of ERISA (§ 1185e(c)(3)), the PHSA (§ 300gg-111(c)(3)), and 215 ILCS 5/356z.3a; and

e.      The AAA and the arbitrators it has appointed do not have authority or jurisdiction over the reimbursement claims that relate to self-insured ERISA-governed benefit plans.

Respectfully submitted,

*/s/ Daniel K. Ryan*
Daniel K. Ryan
Peter E. Pederson
Michael P. Adams
William F. Cook VI
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, Ill 60606
Telephone: 312-704-3248
Facsimile: 312-704-3001
dryan@hinshawlaw.com
ppederson@hinshawlaw.com
madams@hinshawlaw.com
wcook@hinshawlaw.com

*Attorneys for Plaintiffs Cigna Health and Life Insurance Company and Cigna Healthcare of Illinois, Inc.*